837 F.2d 215
 1988 A.M.C. 2934
 MTO MARITIME TRANSPORT OVERSEAS, INC., Plaintiff-Appellee
Cross-Appellant,
v.
McLENDON FORWARDING CO., Defendant,
UMM Al Jawaby Petroleum Co., N.V., Defendant-Appellant
Cross-Appellee.
MTO MARITIME TRANSPORT OVERSEAS, INC. and M.L.S. Maritime
Logistics Service, S.A., Plaintiffs-Appellees,
v.
McLENDON FORWARDING CO., Defendant,
UMM Al Jawaby Petroleum Co., N.V., Defendant-Appellant.
 Nos. 86-2234, 87-2317.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 11, 1988.
 
 Britt K. Davis, Fulbright & Jaworski, Houston, Tex., for defendant-appellant cross-appellee.
 Grace I. Surguy, James J. Senter, Jr., Haight, Gardner, Poor & Havens, Houston, Tex., for MTO Maritime Transport Overseas, Inc.
 Appeal from the United States District Court for the Southern District of Texas.
 Before BROWN, POLITZ, and JOLLY, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 This maritime cargo case comes to us on appeal from a judgment of the District Court, 624 F.Supp. 272, holding Umm Al Jawaby Petroleum Company (Jawaby) and McLendon Forwarding Company (McClendon) jointly and severally liable for actual damages (dead freight) proximately resulting from Jawaby's breach of an oral contract of affreightment between Jawaby and MTO Maritime Transport Overseas (MTO), which was acting as agent for Maritime Logistics Services, Inc. (MLS). MTO's request for an award of attorney's fees pursuant to Texas law was denied on grounds of federal preemption and maritime uniformity.
 
 
 2
 On appeal, Jawaby asserts three claims of error. (i) There was no factual basis for holding that McLendon had "real and apparent authority" to bind Jawaby to the oral booking agreement with MTO; (ii) The trial court abused its discretion in permitting MTO to amend its complaint pursuant to Rule 15(b) of the Federal Rules of Civil Procedure to add MLS as a party plaintiff after the completion of trial. Closely related to (ii), Jawaby urges this court to reverse a subsequent holding of the trial court which granted MTO's Rule 60 motion to add MLS as a party recipient of the judgment, which was originally entered solely in favor of MTO. (iii) Finally, MTO appeals the ruling of the District Court denying recovery of attorney's fees in this in personam admiralty action. We affirm the judgment in its entirety.
 
 
 3
 This is a maritime dispute based upon breach of an alleged oral booking agreement entered into between MTO, acting as agent for MLS and McClendon, acting as agent for Jawaby. McLendon was engaged by Jawaby to book ocean carriage for two workover rigs which were to be shipped separately. A written agreement embodying the terms of the oral agreement, but never signed by McClendon, clearly showed that MTO was at all times acting as agent for MLS. MTO, in its own capacity, sued Jawaby and McLendon[1] seeking damages for dead freight and detention based upon breach of the booking agreement.
 
 
 4
 Although the original complaint reflected MTO's status as agent for MLS, Jawaby did not challenge MTO's status as the real party in interest until the eve of trial in the Joint Pre-Trial Order. In the interest of justice and to avoid prejudice, the District Judge found there to be sufficient evidence of MLS's interest and capacity to sue present in the record to permit amendment of the pleadings under Rule 15(b) of the Federal Rules of Civil Procedure. The parties disagree as to whether MLS was actually added at that time or if MTO was only given permission to add MLS. It is undisputed that no formal motion to amend was filed prior to judgment being rendered.
 
 
 5
 The judgment prepared by the parties and signed by the District Judge did not name MLS as the party for whom the judgment was granted. After appellate proceedings were begun, MTO requested, and this Court remanded, the action to the trial court in order to permit amendment of the judgment under F.R.Civ.P. 60. Upon remand, the motion was granted and judgment entered jointly in favor of MTO and MLS. The confusion of the two parties is continued on appeal, as throughout the briefs the party in interest is referred to as MTO. The two companies will hereafter be collectively referred to as MTO, except when a distinction may be relevant.
 
 A Tale of Two Vessels
 
 6
 In June or July 1983, Jawaby, through its general manager, engaged McLendon to arrange for the ocean carriage of two workover oil rigs and camps. Each rig and camp was to be shipped separately. In September 1983, Jawaby confirmed the employment of McLendon in writing. McLendon arranged for shipment of the first rig, which was carried without incident by World Navigation.
 
 
 7
 Throughout the fall, MTO aggressively solicited McClendon for carriage of the second rig, but on December 8, 1983, McLendon, on behalf of Jawaby, entered into a written booking note with World Navigation for the carriage of the second rig. MTO was aware that World Navigation was chosen to transport the cargo, but continued to lobby McClendon for the booking in the event World Navigation was unable to perform.
 
 
 8
 The second rig arrived in Houston ahead of schedule and Jawaby requested an earlier shipment. McLendon contacted World Navigation which nominated a vessel with an expected arrival date of January 3, 1984. Jawaby found the date satisfactory and made no request for an earlier date.
 
 
 9
 At some point after the rig was delivered to the docks in custody of World Navigation, but before the scheduled loading date of January 3, McLendon became concerned that World Navigation would not be able timely to transport the cargo. On December 28, 1983, McLendon orally agreed with MTO's representative to ship the cargo on an MTO vessel, but refused to sign a written agreement while the cargo was still in the custody of World Navigation. Despite Jawaby's contentions to the contrary, the District Court expressly found, and we accept, that there was no fraud, collusion or bad faith on the part of either MTO, acting on behalf of MLS, or McClendon. (Finding of Fact No. 25).[2]
 
 
 10
 Although McLendon had anticipated no difficulty, World Navigation refused to release the cargo. MTO filed suit against World Navigation in the United States District Court in Houston to obtain a release of the cargo in order to meet the scheduled sailing date (January 8 or 9, 1984) of the vessel nominated by MTO. The lawsuit was unsuccessful and the MTO vessel sailed with significant dead freight. Jawaby was not informed of the tumult in Houston and was unaware of the new agreement with MTO until MTO filed suit. World Navigation was unable to carry the cargo as originally scheduled and the rig was ultimately shipped with a third carrier, for which Jawaby paid full freight.
 
 
 11
 The trial court found an agency agreement existed between Jawaby and McLendon and that McLendon had authority to, and did in fact, enter into a valid booking agreement with MTO on Jawaby's behalf. (Conclusion of Law No. 4). The court further held that the release of the cargo from World Navigation's custody was not a condition precedent to the oral booking agreement. (Conclusion of Law No. 6). MTO's claims for detention damages and attorney's fees were denied, but damages for dead freight were awarded to MTO against Jawaby and McLendon, jointly and severally. Jawaby appeals the judgment on liability; MTO appeals the denial of attorney's fees.
 
 Dr. Jekyll and Mr. Hyde
 
 12
 We address the Standing/Rule 60 Amendment issue first, because if these rulings of the trial court were in error, the remaining issues are moot.
 
 
 13
 F.R.Civ.P. 9(a) requires that a party desiring to raise the issue of capacity "shall do so by specific negative averment." It is settled law that failure specifically to plead capacity waives the right to object.[3] Jawaby failed to assert the specific negative averment required by the Federal Rules and further failed properly to assert a 12(b) defense. In spite of the fact that the booking note was attached to the original complaint, Jawaby did not raise the issue of capacity until the eve of trial. Under these circumstances, the trial court would have had ample justification to hold that Jawaby waived its right to object to MTO's status as the real party in interest.
 
 
 14
 Rather than base his decision on waiver, the trial judge permitted MTO leave to amend the pleadings to add MLS prior to trial. Decisions to grant or deny motions to amend the pleadings rest within the sound discretion of the trial judge.[4] Because the trial court could legitimately have found waiver, we can perceive no abuse of discretion in the decision to allow a Rule 15(b) amendment of the pleadings nor in the Rule 60 Amendment of the judgment.
 
 The Power Behind the Throne
 
 15
 Jawaby attacks the judgment below, primarily on the ground that McClendon had no authority to enter into the oral booking agreement with MTO. Federal maritime law incorporates basic principles of agency law.[5] The existence, or lack thereof, of an agency agreement between Jawaby and McClendon is a question of fact[6] which we review under the clearly erroneous standard.[7] There was ample evidence in the record reflecting the broadest authority invested in McClendon to support the finding of the agency arrangement between McClendon and Jawaby. The trial court was not clearly erroneous. Under the agency agreement, McClendon had the authority to bind, and did in fact bind, Jawaby to the oral booking agreement with MTO. As Jawaby was bound by the agreement, Jawaby is likewise liable for its breach.
 
 
 16
 Jawaby argues that the preexisting written booking agreement with World Navigation in some sense obviated McClendon's authority to enter into another agreement with a separate shipper. The argument is that while McClendon had authority to enter into the agreement with World Navigation, McClendon did not have the authority to breach that agreement.[8] While this is a correct statement of agency law,[9] it has no legal significance on McClendon's authority to enter into a contract with MTO. In apparent recognition of that fact, Jawaby attempts to argue that the release of the cargo from World Navigation's custody was a condition precedent to the contract with MTO.
 
 
 17
 Jawaby cannot seriously argue a lack of authority and is consequently concentrating on the existence of a non-fulfilled condition precedent. The trial court found that the contract between MTO and Jawaby imposed no legal duty upon MTO to obtain release of the cargo, and in fact, MTO relied to its detriment upon McClendon's representations that the cargo would be available for loading. (Conclusion of Law No. 6). The existence of a condition precedent turns on the intent of the parties, a question of fact which we review under the clearly erroneous standard.[10] This finding of the trial court is supported by the record and we uphold the judgment below.
 
 Last We Kill the Attorney's Fees
 
 18
 MTO asserts that it is entitled to attorney's fees under Texas Revised Civil Statutes article 2226[11] in this maritime in personam action. While recognizing the principle that admiralty courts may apply state law in the absence of preemptive federal law,[12] the state statute in question is discretionary,[13] and we perceive no abuse of discretion.
 
 
 19
 We need not reach the issue of the applicability of state laws providing for attorney's fees in an admiralty contract dispute. Following Dearborn, the award of fees under article 2226 is discretionary. The denial of a fee award in this case was not error. 499 F.2d at 288.
 
 Conclusion
 
 20
 There was no error in the District Court's decision to grant MTO's motion to amend either the pleadings or the judgment to add MLS as a party. These decisions rest within the considered discretion of the trial judge; there was no abuse of that discretion here. The holding that a valid agency agreement existed between Jawaby and McClendon is fully supported by the record and is affirmed. Finally, we find no abuse of discretion in the decision to deny attorney's fees under a discretionary state statute.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Continental, the cargo manufacturer, was also joined but was voluntarily dismissed with prejudice. McClendon Forwarding Company did not enter an appearance and a default judgment was entered against the company
 
 
 [2]
 The trial judge stated: "In the event that the foregoing Findings of Fact also constitute Conclusions of Law, they should be regarded as such. In the event that the Conclusions of Law also constitute Findings of Fact, they are adopted as such." References to the Findings of Fact and Conclusions of Law are supplied for ease of reference, and are not intended to indicate an opinion of this Court as to whether a particular statement is a finding of fact or a legal conclusion
 
 
 [3]
 Ralston Oil and Gas Co. v. Gensco, Inc., 706 F.2d 685, 692 (5th Cir.1983); Lang v. Texas and Pacific Ry. Co., 624 F.2d 1275, 1277 (5th Cir.1980); Garbincius v. Boston Edison Co., 621 F.2d 1171, 1174 (1st Cir.1980)
 
 
 [4]
 Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157 (5th Cir.1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83; Henderson v. U.S.F. & G, 620 F.2d 530 (5th Cir.1980)
 
 
 [5]
 West India Industries, Inc. v. Vance & Sons AMC-Jeep, 671 F.2d 1384 (5th Cir.1982)
 
 
 [6]
 Casielles v. Taylor Rolls Royce, Inc., 645 F.2d 498 (5th Cir.1981); Wood v. Holiday Inns, Inc., 508 F.2d 167 (5th Cir.1975); Naviera Neptuno v. All International Freight Forwarders, Inc., 709 F.2d 663 (11th Cir.1983)
 
 
 [7]
 Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)
 
 
 [8]
 The District Court determined that World Navigation did not have a vessel available when it came time to transport the cargo. (Finding of Fact No. 12). Given this finding, which we cannot say is clearly erroneous, it is apparent that a substitute vessel was needed, and McClendon was acting within the scope of his authority in arranging alternate carriage
 
 
 [9]
 See RESTATEMENT (SECOND) OF AGENCY Sec. 51 comment c (1958)
 
 
 [10]
 North Shore Laboratories Corp. v. Cohen, 721 F.2d 514 (5th Cir.1983); Foster v. Daon Corp., 713 F.2d 148 (5th Cir.1983)
 
 
 [11]
 Article 2226 was repealed by Acts 1985, 69th Leg., ch. 959, Sec. 9(1), eff. Sept. 1, 1985 and reenacted as Sec. 38.001 of Tex.Code Ann.Civ.Prac. & Rem
 
 
 [12]
 See In re: Dearborn Marine Services, Inc., 499 F.2d 263, 277 n. 27 (5th Cir.1974), cert. dism'd., 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975)
 
 
 [13]
 Article 2226 in effect at the time of this trial provided as follows:
 Any person having a valid claim against a person or corporation for ... overcharges on freight or express, lost or damaged freight or express ... may present the same to such person or corporation or to any duly authorized agent thereof; and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person or corporation, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney.
 (emphasis added.)